# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IHOP RESTAURANTS LLC, a Delaware limited-liability company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. |
| vs. | )<br>) |
| 1930, LLC, a Louisiana limited-liability company, | )<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT FOR BREACH OF CONTRACT, TRADEMARK INFRINGEMENT, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff IHOP Restaurants LLC ("IHOP" or "Plaintiff"), by and through the undersigned counsel, and for its Complaint against Defendant 1930, LLC ("1930" or "Defendant"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1. This breach-of-contract and trademark-infringement action arises from the natural expiration of the franchise agreement and related agreements between IHOP and Defendant, and Defendant's subsequent breaches of its post-termination obligations under the agreements and infringement of Plaintiff's trademarks.

2. As set forth in further detail herein, upon expiration of the franchise agreement and related agreements, Defendant was required to cease operation of the franchised restaurant, vacate the premises of the franchised restaurant and provide access to IHOP, and refrain from any further use of IHOP's trademarks, trade secrets, and other intellectual property.

3. Despite the expiration of the franchise agreement and related agreements on January 30, 2025—which included termination of Defendant's license to use IHOP's trademarks—Defendant has failed to cease operations or vacate the premises of the franchised

restaurant, and continues to wrongfully operate the franchised restaurant, use IHOP's trademarks, and cause IHOP to suffer irreparable harm. These significant breaches follow the prolonged, uncured defaults of certain of Defendant's affiliates under other franchise agreements and related agreements with IHOP concerning other IHOP restaurants. As of the filing of this Complaint, Defendant's affiliates and guarantors owe IHOP over $440,000 in past-due rent, royalties, advertising fees, and other fees pursuant to the franchise documents for those other IHOP restaurants. Further, the continued unauthorized operation irreparably harms IHOP's brand and goodwill, as customers associate their negative experiences at Defendant's unauthorized location with IHOP's broader restaurant system.

4. With this action, IHOP seeks a preliminary and permanent injunction enjoining Defendant's unlawful actions and (1) requiring Defendant to cease operating the franchised restaurant and surrender the premises of and leased equipment in the franchised restaurant to IHOP; and (2) requiring Defendant to deliver and surrender up to IHOP any and all manuals, the Operations Bulletins, instruction sheets, forms, marks, devices, training materials, confidential communications, trademarks, and the possession of any physical objects bearing or containing any of the trademarks, and to immediately cease use of any such trademarks or trade secrets.

## PARTIES

5. Plaintiff IHOP is a Delaware limited-liability company. The sole member of IHOP is IHOP Funding LLC, a Delaware limited-liability company. The sole member of IHOP Funding LLC is IHOP SPV Guarantor LLC, a Delaware limited-liability company. The sole member of IHOP SPV Guarantor LLC is International House of Pancakes, LLC, Delaware limited-liability company. The sole member of International House of Pancakes, LLC is Dine Brands Global, Inc., a Delaware corporation with its principal place of business in Pasadena, California. Thus, for purposes of 29 U.S.C. § 1332, Plaintiff IHOP is a citizen of Delaware and California.

6. Defendant 1930 is a Louisiana limited-liability company. Upon information and belief, the sole member of 1930 is Orion Restaurant Holdings, LLC, a Texas limited-liability company. Upon information and belief, the members of Orion Restaurant Holdings, LLC are FWC Enterprises, Inc., a Louisiana corporation with its principal place of business in Louisiana, and Transouth Hospitality, L.L.C., a Texas limited-liability company. Upon information and belief, the members of Transouth Hospitality, L.L.C. are Andrew C. Jackson, an individual domiciled in Texas; and John Terril Lenhart, an individual domiciled in Texas. Thus, for purposes of 29 U.S.C. § 1332, Defendant 1930 is a citizen of Louisiana and Texas.

## JURISDICTION AND VENUE

7. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367 because it is a civil action involving claims arising under the laws of the United States relating to trademarks and all other claims in the action are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

8. This Court also has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to IHOP's claims occurred in this judicial district.

10. Defendant is subject to personal jurisdiction in this Court because Defendant (1) is a Louisiana limited-liability company; (2) has one or more members domiciled in Louisiana; (3) entered into a contract in Louisiana; (4) entered into a contract that was to be performed in Louisiana; and (5) otherwise has the necessary minimum contacts with Louisiana.

## FACTS COMMON TO ALL COUNTS

### IHOP's Business and Marks

11. IHOP is a franchisor of nationally recognized restaurants known as IHOP®, or International House of Pancakes, specializing in American breakfast and brunch foods.

12. IHOP has adopted and used in interstate commerce certain trademarks (the "Marks"[1]), which have been registered with the United States Patent and Trademark Office in connection with the operation of IHOP restaurants and licensed to authorized franchisees.

13. IHOP and its affiliates and franchisees have continuously used the IHOP® name for decades and consistently developed goodwill through their use. IHOP and its authorized franchisees have used and continue to use the Marks to identify their goods and services in interstate commerce in connection with IHOP restaurants. The Marks are intended to distinguish IHOP's activities in this regard from those who are not so authorized.

14. IHOP spends substantial sums for advertising and promotion of the Marks. IHOP has prominently displayed the Marks on outdoor signs, Internet websites, television advertising, social media, and other advertising material throughout the Americas, the Middle East, and South Asia. IHOP has acquired a valuable reputation and goodwill among the public as a result of such customer association with the Marks. The Marks have developed a secondary meaning associating them with IHOP. The Marks are distinctive, widely recognized, and engender a substantial amount of goodwill, on which IHOP's franchisees depend.

15. Pursuant to individual franchise agreements, IHOP and/or its affiliates grant franchisees the license to use IHOP's Marks in their operation of IHOP® restaurants at locations specified in their franchise agreements and on the terms set forth in the franchise agreements,

---

[1] A list of the Marks is attached hereto as **Exhibit A**.

4

including, but not limited to, a defined period of time. In exchange for these and other benefits and services, IHOP receives payments from its franchisees, principally in the form of royalties.

## The Franchise Documents

16. On or about March 27, 2009, IHOP Franchise Company, LLC entered into the Franchise Agreement ("Franchise Agreement") with Defendant for the IHOP restaurant located at 3006 College Drive, Baton Rouge, Louisiana 70808 (the "Franchised Restaurant" or "IHOP #1930").

17. Plaintiff IHOP is the successor-in-interest to IHOP Franchise Company, LLC under the Franchise Agreement. A true and correct copy of the Franchise Agreement, as amended, is attached to this Complaint as **Exhibit B** and is fully incorporated by reference.

18. At the time Defendant entered into the Franchise Agreement, the premises of the Franchised Restaurant were the subject of a Sublease dated May 31, 2001, as amended, between IHOP Properties, Inc. and Defendant's predecessor-in-interest, Teodoro Regalado (the "Sublease").

19. Plaintiff's affiliate, IHOP Leasing, LLC ("IHOP Leasing"), is the successor-in-interest to IHOP Properties, Inc. under the Sublease. A true and correct copy of the Sublease, as amended, is attached to this Complaint as **Exhibit C** and is fully incorporated by reference.

20. At the time Defendant entered into the Franchise Agreement, the equipment in the Franchised Restaurant was the subject of an Equipment Lease dated May 31, 2001, as amended, between IHOP Restaurants, Inc. and Defendant's predecessor-in-interest, Teodoro Regalado (the "Equipment Lease," and, together with the Franchise Agreement and Sublease, the "Franchise Documents").

21. Plaintiff IHOP is the successor-in-interest to IHOP Restaurants, Inc. under the Equipment Lease. A true and correct copy of the Equipment Lease, as amended, is attached to this Complaint as **Exhibit D** and is fully incorporated by reference.

22. Under the Franchise Agreement, IHOP allowed Defendant to operate the Franchised Restaurant using the Marks and system for the Initial Term, which, pursuant to Section 3.01 of the Franchise Agreement, was set to expire on July 30, 2024. *See* Ex. A.

23. Similarly, in the Sublease and Equipment Lease, IHOP allowed Defendant to occupy the premises of IHOP #1930 and possess and use certain equipment for a defined term. *See* Exs. C and D.

### The Parties' Extensions of the Franchise Documents

24. In or around December 2022, as the expiration date neared for a franchise agreement for an IHOP® restaurant operated by an affiliate of Defendant, Defendant's affiliate and Defendant's principals requested an extension of the franchise agreement for the affiliate's restaurant in order to permit Defendant's principals to explore a potential global assignment of the Franchise Agreement and the franchise agreements for other IHOP restaurants Defendant's affiliates operated.

25. Accordingly, through individual amendments to the relevant franchise documents, beginning in or around December 14, 2022, IHOP and Defendant entered into a series of extensions of the franchise agreement for the IHOP® restaurant operated by Defendant's affiliate and later for the Franchise Documents.

26. As part of that, on or about December 27, 2024, the parties entered into the following amendments to the Franchise Documents: (a) that certain Fourth Amendment to Franchise Agreement ("Fourth Amendment to Franchise Agreement"); (b) that certain Third Amendment to Sublease ("Third Amendment to Sublease"); and (c) that certain Third Amendment

to Equipment Lease ("Third Amendment to Equipment Lease," and, together with the Fourth Amendment to Franchise Agreement and Third Amendment to Sublease, the "December 2024 Amendments"). Ex. B-D, December 27, 2024 Amendments.

27. The December 2024 Amendments extended the term of each of the Franchise Documents to and until January 30, 2025, with the Fourth Amendment to Franchise Agreement specifically noting that it "shall expire . . . on January 30, 2025." *Id.*

28. In addition, through the Fourth Amendment to Franchise Agreement (and all prior amendments to the Franchise Agreement), the Defendant, its affiliates, and guarantors, jointly and severally, agreed to a broad, general release of IHOP:

> Franchisee and Guarantors, on behalf of themselves and their respective parents, subsidiaries, and affiliates (collectively, the "**Releasing Parties**"), jointly and severally, hereby release, relinquish and discharge Franchisor, Franchisor's predecessor(s), their parents, subsidiaries and affiliates and the respective directors, officers, managers, agents, attorneys, employees, affiliates, insurers, successors and assigns of Franchisor, Franchisor's predecessor and their parents, subsidiaries and affiliates (collectively, the "**Released Parties**") from any and all obligations, claims, liabilities, causes of action and demands of any nature with respect to any acts taken or omissions occurring prior to the date of this Amendment, including, but not limited to any and all obligations and claims arising out of or existing by reason of the Franchise Agreement or the termination thereof or any other franchise agreement or other agreement or commitment among the parties hereto or their parents, subsidiaries and affiliates.

Ex. B, Amendments to Franchise Agreement.

### The Expiration of the Franchise Documents Following Defendant's January 2025 Rescission of a Potential Additional Extension

29. Following the December 2024 Amendments, IHOP, Defendant, and Defendant's principals and affiliates attempted to advance the negotiations of a potential global assignment of the Franchise Agreement and franchise agreements for other IHOP restaurants Defendant's affiliates operated.

7

30. As part of those negotiations, which included counsel for the parties, IHOP on January 30, 2025, presented Defendant and its principals and certain of its affiliates with an additional set of amendment agreements that, if accepted, would be effective January 30, 2025, would have extended the term of the Franchise Documents to and through March 16, 2025, and would have required Defendant and/or its affiliates to comply with certain assignment-related obligations.

31. With respect to the proposed amendment agreements for the Franchise Documents, Defendant signed each of them on or about January 31, 2025.

32. However, at 3:25 p.m. CST on January 31, 2025, Defendant's counsel informed IHOP by email that, due to alleged "inadvertence" by Defendant that "did not accurately reflect our meeting of the minds," "any and all signatures on behalf of any franchisee entity or guarantors are fully rescinded."[2]

33. Accordingly, with Defendant's purported rescission, the Franchise Documents expired on January 30, 2025, as set forth in the December 2024 Amendments.

**Defendant's Post-Termination Obligations under the Franchise Documents**

34. Among other obligations under the Franchise Documents, and upon the expiration or termination of the Franchise Agreement, Defendant was required to:

> [D]eliver and surrender up to Franchisor or its Affiliate any and all manuals, Bulletins, instruction sheets, forms, marks, devices, Trademarks, and the possession of any physical objects bearing or containing any of said Trademarks, and shall not thereafter use any of the same or any such Trademarks or Trade Secrets.

---

[2] Even if Defendant's rescission of the amendments was invalid, the Franchise Agreement amendment included multiple obligations Franchisee was required to perform on or before January 31, 2025 and that, if not timely performed, caused the Franchise Agreement to terminate immediately. Having purportedly rescinded its acceptance of the amendments, Defendant failed to perform the required obligations, and, as a result, the Franchise Agreement terminated automatically on January 31, 2025.

Ex. B, Franchise Agreement, ¶ 8.09.

35. As set forth in further detail herein, the Franchise Agreement imposed additional obligations on Defendant upon expiration, including the following mandates:

- "Franchisee shall forthwith discontinue the use of Franchisor's Trademarks";

- "[Franchisee] shall not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression that it is either directly or indirectly associated, affiliated, franchised or licensed by or related to, the IHOP Restaurant system";

- "[Franchisee] shall not, either directly or indirectly, use any name, logotype, symbol or format confusingly similar to the IHOP Trademarks or formats, at either the Franchised Location, the Franchised Restaurant or any other location not then Franchised to Franchisee by Franchisor";

- "Franchisee shall not, either directly or indirectly, for any purpose whatsoever, use any of Franchisor's Trade Secrets, procedures, techniques or materials acquired by Franchisee by virtue of the relationship created by this Franchise Agreement, including, (i) recipes, formulae and descriptions of food products; (ii) the Operations Bulletins and all manuals, Bulletins, instruction sheets, and supplements thereto and shall return same to Franchisor; (iii) all forms, advertising matter, marks, devices, insignias, slogans and designs used from time to time in connection with IHOP Restaurants; and (iv) all copyrights, Trademarks and patents now or hereafter applied for or granted in connection with the operation of IHOP Restaurants."

*Id.*, ¶ 16.02(a).

36. Similarly, under the Equipment Lease, through which Defendant leased the Franchised Restaurant's fixtures, equipment, and expendables (collectively, "Personal Property") from IHOP Restaurants, Defendant was obligated upon expiration to "promptly return the Personal Property to [IHOP] in as good condition as when received, reasonable wear and tear excepted, and in the quantities" set forth in the Equipment Lease. Ex. D., Equipment Lease, Section V.

37. For the Sublease, through which Defendant subleased the premises of the Franchised Restaurant from IHOP Leasing, Defendant's continued occupancy of the Franchised

Restaurant as a holdover tenant violated the Sublease, triggering IHOP Leasing's remedies thereunder, including, but not limited to, its right to:

> Reenter the Premises with or without process of law and take possession of the same and of all equipment and fixtures of Subtenant therein, and expel or remove Subtenant and all other parties occupying the Premises, using such force as may be reasonably necessary to do so, without being liable for any prosecution for such reentry or for the use of such force.

Ex. C, Sublease, § 8.1(a).

### IHOP's Confirmation of Expiration of the Franchise Documents

38. On February 3, 2025, IHOP sent Defendant a Confirmation of Expiration of Franchise Documents & Demand for Compliance with Post-Termination Obligations ("Expiration Notice and Demand") relating to the Franchised Restaurant in which IHOP (1) confirmed the natural expiration of the Franchise Documents on January 30, 2025, and (2) demanded Franchisee comply with its post-termination obligations under the Franchise Documents. A true and correct copy of IHOP's February 3, 2025 Notice is attached to this Complaint as **Exhibit E** and is fully incorporated by reference.

39. Following receipt of the Expiration Notice and Demand, Defendant did not dispute or otherwise challenge the expiration of the Franchise Documents on January 30, 2025, nor did Defendant comply with the demands stated therein.

### Defendant's Infringement of the Marks, Violation of its Post-Termination Obligations under the Franchise Agreement, and the Irreparable Harm to IHOP

40. Despite IHOP's Expiration Notice and Demand, Franchisee has failed to comply with and satisfy any of its post-termination obligations under the Franchise Documents and continues to operate the Franchised Restaurant while using IHOP's Marks, to occupy and use the premises of the Franchised Restaurant, and to possess and use the leased Personal Property.

41. Defendant continues to use IHOP's Marks in connection with the operation of the Franchised Restaurant, continues to market and promote the Franchised Restaurant through the Marks, continues to hold the Franchised Restaurant out to the public as an authorized IHOP restaurant, and continues to pass off the Franchised Restaurant and the goods and services offered as being authorized by IHOP when they are not.

42. Defendant's use of the Marks is without license or consent of IHOP and has caused, and is likely to cause, mistake, confusion, or deception in the minds of the public as to the source, affiliation, and sponsorship of the Franchised Restaurant.

43. IHOP and Defendant offer identical or substantially identical goods and services through their restaurants. As such, the goods and services Defendant provide using the Marks are offered to the same class of consumers as those who patronize authorized IHOP restaurants. Upon seeing the familiar and well-known Marks through Defendant's unauthorized use of the Marks, consumers will be deceived into concluding the Franchised Restaurant bears the Marks pursuant to IHOP's authority and permission.

44. So long as Defendant continues to use the Marks in connection with the Franchised Restaurant, consumers have no practical way of knowing the Franchised Restaurant is no longer operating pursuant to agreement with or authority from IHOP. As a result, any consumer dissatisfaction or negative perceptions will be attributed to all franchised restaurants. Further, IHOP is no longer able to control and monitor the use of its Marks through requiring and verifying compliance with IHOP's brand-protection standards.

45. As an example, in the months preceding the expiration of the Franchise Documents, multiple customers submitted complaints to IHOP and/or its affiliates regarding their experience at the Franchised Restaurant. The customers reported, among other things, that:

- "I'm very disappointed about my meal I received Christmas Day. You're [sic] website mentioned nothing about delays in service. Yet I waited over 30 minutes to get my order. And when I did receive it, it was cold. I really have no intention of visiting an IHOP again."

46. As this comment and others reflect, prior to expiration, customers associated their experience at the Franchised Restaurant with all IHOP® franchised restaurants. With Defendant's unauthorized operation and use of IHOP's Marks, customers have no ability now to differentiate between authorized IHOP® restaurants and Defendant or understand that IHOP no longer authorizes Defendant to use IHOP's Marks in operating the Franchised Restaurant. Thus, customers will improperly and irreparably continue to associate any perceived negative experience at the Franchised Restaurant with all IHOP® franchised restaurants.

47. Defendant has received actual notice of its violation and infringement of the Marks, and has constructive notice of IHOP's rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072. Defendant's continued infringement is willful, malicious, fraudulent, and deliberate.

48. Defendant has breached the Franchise Agreement and has not cured (and cannot cure) the breaches, and the expiration of the Franchise Agreement on January 30, 2025 ended any rights Defendant had to possess and use the property covered by the Franchise Agreement.

49. IHOP has at all times complied with and fully performed its obligations under the Franchise Agreement.

**COUNT I**
**BREACH OF CONTRACT**
**(Franchise Agreement)**

50. IHOP incorporates the preceding paragraphs as if fully set forth herein.

51. The Franchise Agreement is a duly executed, valid and binding contract, supported by sufficient consideration, between IHOP and Defendant.

52. IHOP has performed, or stood willing to perform, all or substantially all of the obligations required of it under the Franchise Agreement, or IHOP was otherwise excused from such performance.

53. All conditions required by the Franchise Agreement for Defendant's performance thereunder have occurred or were excused.

54. Defendant has breached the Franchise Agreement by failing to comply with its post-termination obligations, including, without limitation:

- Ceasing to operate the Franchised Restaurant pursuant to Paragraph 8.09 of the Franchise Agreement;
- Ceasing use of IHOP's Marks; and
- Satisfying its obligations under Paragraph 16.02 of the Franchise Agreement.

55. As a direct result of Defendant's breaches of the Franchise Agreement, IHOP has been deprived of the benefits to which it is entitled under the Franchise Agreement and has suffered damages.

56. As a direct and proximate result of Defendant's breaches, IHOP has incurred harm and suffered damages. Monetary damages, however, are an inadequate remedy at law for Defendant's breaches, and IHOP therefore is entitled to injunctive relief and/or specific performance, in addition to damages.

## COUNT II
### (Trademark Infringement - 15 U.S.C. § 1114 of the Lanham Act)

57. IHOP incorporates the preceding paragraphs as if fully set forth herein.

58. Following the expiration of the Franchise Agreement on January 30, 2025, Defendant has continued, without IHOP's consent, to use the Marks in commerce or in connection with the sale, offering of sale, distribution, and/or advertising of goods and services. Defendant has done so by, among other things, continuing to operate the Franchised Restaurant and using the

Marks on signage and menus. Such use of the Marks, without IHOP's permission or authority, is likely to cause confusion or mistake, or to deceive the public as to Defendant's status as an IHOP franchisee and/or approval or authorization by IHOP, and, upon information and belief, is so intended by Defendant.

59. The foregoing conduct is likely to confuse the public into believing the Defendant's continued use of the Marks is authorized by IHOP and that Defendant's continued operation of the Franchised Restaurant and continued display of IHOP's Marks at the Franchised Restaurant, at the same location as formerly authorized by IHOP, is still authorized by IHOP.

60. IHOP has no plain, speedy, and adequate remedy at law and is suffering irreparable injury and harm as a result of the foregoing acts of trademark infringement by Defendant, including damages to its business reputation and goodwill, and such damage is difficult if not impossible to quantify. IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a). Unless Defendant is enjoined, Defendant will continue to infringe the Marks and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks, as well as likely to cause confusion among customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution.

61. IHOP is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

## COUNT III
### (Unfair Competition - 15 U.S.C. § 1125(a) of the Lanham Act)

62. IHOP incorporates the preceding paragraphs as if fully set forth herein.

63. Defendant has, without authorization, used in commerce the Marks, and/or have made misleading descriptions of fact, or misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the connection or association of Defendant

with IHOP, and/or as to the sponsorship or approval of Defendant's goods and services, or commercial activities.

64. Defendant's acts have been committed with knowledge of IHOP's exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

65. The foregoing conduct is likely to confuse the public into believing the Defendant's continued operation of the Franchised Restaurant and continued use of IHOP's Marks at the Franchised Restaurant, at the same location as a formerly authorized IHOP franchise, is authorized by IHOP, or that Defendant's franchise is connected with IHOP, in violation of 15 U.S.C. § 1125(a).

66. IHOP has no plain, speedy, and adequate remedy at law and is suffering irreparable injury and harm as a result of the foregoing acts of trademark infringement by Defendant, including damages to its business reputation and goodwill, and such damage is difficult if not impossible to quantify. IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a). Unless Defendant is enjoined, Defendant will continue to infringe the Marks and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks, as well as likely to cause confusion among customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution.

67. IHOP is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

**PRAYER FOR RELIEF**

WHEREFORE, IHOP prays that the Court enter judgment in its favor and against Defendant for:

a. A preliminary and permanent injunction, against Defendant, and its officers, agents, servants, employees, attorneys, and other persons acting in concert with Defendant:

   (i) enjoining Defendant from operating the Franchised Restaurant;

   (ii) enjoining Defendant from using the Marks or any trademark, service mark, logo, or trade name that is confusingly similar to IHOP's trademarks and trade name;

   (iii) enjoining Defendant from otherwise infringing IHOP's trademarks and tradenames or using any similar designation, alone or in combination with any other component;

   (iv) enjoining Defendant from passing off any of its goods or services as those of IHOP's or IHOP's authorized franchisees;

   (v) enjoining Defendant from causing likelihood of confusion or misunderstanding as to the source or sponsorship of its business, goods, or services;

   (vi) enjoining Defendant from causing likelihood of confusion or misunderstanding as to its connection with IHOP and IHOP's franchisees or any of IHOP's goods or services; and

   (vii) enjoining Defendant from unfairly competing with IHOP or IHOP's franchisees, in any manner;

b. An order requiring Defendant to file with the Court and to serve upon IHOP's counsel within ten (10) calendar days of entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which Defendant has complied with such injunction or order;

c. The costs and expenses incurred in bringing this action, including IHOP's reasonable attorneys' fees;

d. Pre- and post-judgment interest; and

e. Such other and further relief as the Court deems appropriate.

**[SIGNATURE ON FOLLOWING PAGE]**

Dated: February 10, 2025

                                          Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

By:    */s/ Brian M. Ballay*
      Adam B. Zuckerman (#25943)
      Brian M. Ballay (#29077)
      Benjamin W. Janke (#31796)
      Joseph P. Briggett (#333029)
      201 St. Charles Avenue, Suite 3600
      New Orleans, Louisiana 70170
      Telephone: (504) 566-5200
      Facsimile: (504) 636-4000
      azuckerman@bakerdonelson.com
      bballay@bakerdonelson.com
      bjanke@bakerdonelson.com
      jbriggett@bakerdonelson.com

Victor C. Johnson (#25731)
James D. Tuck, *to be admitted pro hac vice*
DENTONS US LLP
100 Crescent Court, Suite 900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259 0910
victor.johnson@dentons.com
james.tuck@dentons.com

Joel D. Siegel, *to be admitted pro hac vice*
Norman M. Aspis, *to be admitted pro hac vice*
DENTONS US LLP
601 S. Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
joel.siegel@dentons.com
norman.aspis@dentons.com

Brian P. Baggott, *to be admitted pro hac vice*
DENTONS US LLP
4520 Main Street, Ste. 1100
Kansas City, Missouri 64108
Telephone: (816) 460-2654
Facsimile: (816) 531-7545
brian.baggott@dentons.com

**ATTORNEYS FOR PLAINTIFF
IHOP RESTAURANTS LLC**